Caldwell, J,
George Kirkhope was killed at a point somewhere near *426 Noble on the Lake Shore & Michigan Southern R. R., while crossing the railroad track, he being upon the highway. He was riding in a wagon, and his son was with him. The train ran into the wagon, and Kirkhope and his son were killed. Schade was appointed administrator, and he brings this action.
It is not necessary to state at this time definitely what negligence he complains of, farther than that he complains that the bell was not rung and the whistle not blown, there were no gates, and no flagman at the crossing; that the train was run at a very high and reckless rate of speed, and especially so when taken into connection with the surroundings, and it being difficult for any one to see a train approaching as that train was approaching this crossing.
The case went to trial, and there was a judgment in favor4 of the administrator, and the railroad is here averring error. The averments are that the jury were not justified in finding the verdict which they found, there being special findings as to some matters; and in the next place that the approximate cause of the injury was negligence of the deceased, and not of the railroad company; that the court erred in submitting to the jury the question of whether the railroad company was guilty of negligence in not seeing the deceased upon the track. It is averred that there was error in the charge as to the rate of speed at which the railroad company had a right to run this train. It is averred that there were errors in refusing to give certain requests.
In the order of the argument, the first error complained of in the charge is that the attorneys made a request and it was this:
“That the defendant company in determining the rate of speed at which this train should run — such rate being reasonable and proper in view of the objects to be accomplished by the company outside of municipalities in this state — is not bound to consider the increased risk to persons *427 at road crossings, or lessen the speed of its trains at such crossing on that account; and that if there was nothing in the rate of speed of the train while approaching the road crossing in controversy, inconsistent with the general and legitimate conduct of the business of the defendant, that then in that case such rate of speed can not of itself be an act of negligence for which the defendant is responsible in this action.” •
It is claimed that that charge was not given, nor anything that is its equivalent. The request is based upon the fact that the legislature not having controlled the rate of speed, not having determined by any statute at what rate of speed railroads should run at crossings in country districts where there is a highway crossing the railroad tracks, and not having required any gates or any flagman at such places, that the rate of speed has been left to the railroad company, and that such rate of speed can be used at these crossings which the railroad company deems proper and right in the prosecution of its business. And it is urged that it materially interfered with these pulbic servants and with the public generally, if trains had to be slackened much at highway crossings; and that the full intent of the legislature is that the railroads should govern this matter by its own rules; and that having determined the rate of speed of their trains, and not having determined that they shall slacken at the crossings or highways, it necessarily follows that crossing the highway at a high rate of speed is not per se negligence. It is claimed that the court did not give that request.
The court in its charge said this:
‘‘It is said the defendant company was guilty of negligence in the rate of speed it was running its train upon that occasion, and in its failure to keep a flagman at the crossing to warn persons approaching the crossing of the approach of the train. The law *428 does not require the defendant company to place a flagman or any other warning than what the evidence shows was at this crossing on this occasion, either at the place of the crossing or the approach of the train. It does not and did not on this occasion limit its rate-of speed at this location or locations similar to it. Whether or not failure to give warning at a crossing other than ringing a bell or blowing a whistle, and whether or not the rate of speed at which the train was run, either one or both, would constitute acts of negligence, depends upon the facts and circumstances surrounding this crossing, the nature and character of it, and the damages incident to the use of the crossing by the defendant company arising from the rate of speed at which it ran its train. I mean by that that it is not necessarily negligence on the part of the railroad company to run its train at a high rate of speed across this crossing, nor necessarily negligence on its part that it did not have a flagman or a man stationed there to warn persons of the approach of the train; but that the high rate of speed and the absence of the flagman are facts to be taken together with every other fact which tends to bear upon the dangerous character of this crossing and the dangers to which the public in the use of the crossing would be subject by the defendant’s use of it. They are questions to be considered by you in determinng whether or not in these respects the defendant company was guilty of negligence. By being guilty of negligence I mean whether or not in running the train at that crossing in the absence of any other warning than they did give, whatever you may find that to be, and considering the nature and character of the crossing and the difficulties that might or might not be in the way of parties seeing the approach of the train; and all other facts concerning it, whether or not the defendant company used ordinary care, such care as an ordinarily prudent person would use under like circumstances in that employment, that business, that place and those surroundings in the running of their train and in the management of their business. This care they are required to use; and it is in these respects the plaintiff says they failed to use that degree of care. Did the rate of speed at which they ran their train amount to a failure to use ordinary care, considering the *429 nature and character of the crossing and of the surroundings, all the facts bearing upon the character and dangers which might be' connected with it. Then whatever the rate of speed mentioned, whatever the surroundings upon the crossing mentioned, whatever the dangers mentioned incident to it, if it was in the exercise of ordinary care in that line of business, considering the locality and circumstances and the business carried on, the dangers incident to the use of it, taking into consideration the exercise of ordinary care on the part of the public .in the use of the highway, it would not be negligence.”
I have read the entire charge upon that subject by the court. In the brief certain portions of it were taken out and not fully set out.
Although the court here has charged that it is not negli gence per se, or not necessarily negligence running at a high rate of speed at crossings of highways, yet the court says to the jury that this railroad is by such rules not exempt from the exercise of ordinary care at such places. In fact, no railroad nor no person under any ordinary circumstances is ever exempt from exerising ordinary care
There may be instances where ordinary care amounts to but very little; but at the same time this railroad was certainly at this eorssing, as at all crossings of highways, bound to exercise towards the public traveling the highway ordinary care. From the fact that it is not negligence per se to run at a high rate of speed, we think that does not exempt the railroad company from the exercise of ordinary care while running at that high rate of speed.
Now, ordinary care in all cases must depend upon the surroundings, must depend upon the dangers of the place to some extent. Ordinary care varies according to the hazards of the undertaking and .the hazards of the circumstances in the exercise of ordinary care. The court in submitting to the jury the circumstances of this case makes it necessary to state here that tb.e circumstances referred to *430 are these: that the railroad company . on its own right of way had allowed brush to grow up between the railroad track and the highway where the highway parallels or nearly parallels the railroad track before approaching this crossing. When near the crossing, the higway turns and goes across the railroad track. Now the railroad company having permitted this brush to grow up on its own land so as to obscure the view of the train approaching upon the track for some distance, is one circumstance which the court refers to especially in the surroundings of this crossing. It will hardly do to say that' the railroad company is in the exercise of ordinary care when it runs its trains on all crossings at a very high rate of speed. There may be circumstances' brought about by the railroad company itself, as it was in this case, where it could hardly be said to be the exercise of ordinary case to be running at a very high rate of speed.
Then we think, although a party when he got near the track could have seen this train,yet there is much evidence in the bill of exceptions tending to show that until he got close to the track, it would be quite impossible for him to see the approach of this particular train, that it would be obscured from view. The court said to the jury substantially this: That while it is not negligence per se to be running on a crossing at a high rate of speed, yet if you find the circumstances are such that this railroad, in the exercise of ordinary care, should have slacked up at this particular crossing and not have run at so high a rate of speed, then I say to you that the railroad company is not excused. And the court submitted the question to the jury whether under all the circumstances, the railroad company was in the exercise of ordinary care at that crossing. It may seem a little dangerous to submit to a jury this question under these particular circumstances, and the court in his charge brings in with it also what the railroad had done to guard this crossing; what it did to protect this party by way of ringing *431 bells and blowing whistles, and it might have been just as well to have charged the jury separately upon these matters, instead of bringing all the acts of negligence alleged in the petition under one general charge. The charge might have been as to the separate acts of negligence averred. But still, considering the whole matter, we think the court did not err under the circumstances of this case. In fact, the supreme court has said that it would be negligence for a railroad to run its train on a crossing where the approach of the train is obscured from view by anything it may have placed on its own tracks, as for instance other cars; that they would be called upon to exercise a biger degree of care, and that they could not run at so high a rate of speed under those circumstances as they would if those circumstances did not exist. We think the court has confined the law within that principle, and we do not reverse this case on that allegation of error.
The court charges again:
“One of the charges of negligence in this case is that while George Kirkhope, the deceased, was upon the track in a place of danger from the approaching engine, the engineer or persons in charge of this train could have seen him, and at least have checked the speed of the engine so as to permit him to pass on in safety. We say to you, if by the exercise of ordinary care on the part of the engineer he could have seen the decedent George Kirkhope, upon the track, and the dangerous position he was in, and by the exercise of ordinary care could have stopped his engine in time, or checked its speed so as to have permitted him to escape from this dangerous place, and saved bis life, it was his duty to exercise that care. ”
Then the court gave the law in an exact manner in this way:
“Failure to do it would be negligence, which would permit recovery in this case, although George Kirkhope may have been guilty of negligence in going upon the track and being in that position. That is upon the rule that *432 •where a person sees another in a position of danger, no matter how such person came there, if by the exercise .of ordinary care he could save such person from injury, it is bis duty to do so, and the failure to exercise such care is negligence. ”
This is objected to, because the court has stated the abstract rule of law, given at the last of what I have read, as being good law; but the objection is in the application of it to this particular case. It seems from the evidence that Kirkhope had driven upon this track as he approached it, and as he was about half way across the track on which the train was running, the wagon was struck about the center — his horse apparently had gotten over. George Kirkhope and his son and the horse were all killed. The wagon was broken in two in the center, one part being left on one side of the train and the other on the other side.
The evidence is that the engineer did not see him on the track till he was within about twenty feet of him. Then there is evidence on the part of the engineer that with the head light he could distinguish objects 300 feet ahead of the train, and yet he did not see this object upon the track till he was within twenty feet of it. This train was running at a very rapid speed, and the evidence had a tendency to show that if he had been looking when 200 or 300 feet away, he would have seen Kirkhope upon the track or in the place of danger; and there is evidence tending to show that if he had been looking at that time, he would have seen him. That is, he could see by his head light to distinguish objects 300 feet ahead of his train. And there is evidence tending to show that if he had slowed up when at that point where there is evidence tending to show he might have seen the 'deceased, that it would have given the deceased time to have got clear of the track. Under that testimony the court charged that if Kirkhope was negligent in getting upon the track, and *433 got upon the track when he could have seen this train approaching, and should have seen it, notwithstanding that position of error, if the engineer could have saved him after he saw him there, then the company ' would be negligent. He went further and said that if in the exercise of ordinary care the engineer could have seen him in time — not that he did, but if he could have seen him in time to have saved his life he was negligent if he did not do so. This part is objected to. It is claimed the law does not warrant that charge; that the responsibility of a railroad company under such circumstances is that it shall do all that is possible in the exercise of ordinary care after a party is seen in a' position of danger, not after he might have been seen. If it is the law that a party is guilty of negligence after he might have seen, then it might be urged that parties might often be held responsible when no danger was expected and none was apparent, and that they must be upon such continual looking for danger that it would interfere with the proper prosecution of the business of the defendant. I have seen this objection, stated in a text book, to this rule being extended to what might have been seen.
Now the case in 49 Ohio St., Railroad Company v. Kassen, which has been frequently cited to this court of late, is a case where a party fell off a train,or got off a train,and waa injured. It was purely his own negligence. The parties on the train he fell from knew of his helpless condition, and went on and paid no attention to him. They did not report it to the company, and did nothing to get him out of his place of danger, Another train came along, not knowing of his condition, and injured him, and the court there seems to justify, at least' in the opinion of the majority of us, the rule of law in this state, that a defendant in cases of this character is liable when he sees the plaintiff •in a place' of danger, or when the plaintiff is in a place of *434 danger, not only from the time he sees him, but from the time he should have seen him in the exercise of oedinary care. In the Ekssen case the lapse of time in which the railroad company could act to save him, was long. There may be cases where the parties act so nearly at the same moment that the court can say, as a matter of law, that there was no time nor opportunity for the defendant to do anything to save the plaintiff from the danger in which he negligently placed himself. Many cases will be found between these extremes, as to time and opportunity. If the evidence tends to 3how that there is time and opportunity, after defendant becomes aware, or by the exercise of ordinary care would know of the peril of plaintiff, to save him from injury, then the court should leave to the jury the question of whether or not the defendant acted with due care in trying to save plaintiff from injury. If the time is long, as in the Kassen case, and the defendant does nothing, knowing the danger of plaintiff, then,all will agree,the defendant is liable. That liability does not depend upon the time, alone. Time and opportunity, if long and prominent, only more clearly mark and emphasize the proximate cause of injury. As time and opportunity lessen, the proximate cause may become more uncertain. Yet it is the province of the jury to say whether they exist, or not. It might be said in behalf of this rule that the railroad company is never excused from the exercise of ordinary care, Here is a pkce of danger. It is the duty of any one approaching a railroad crossing upon a highway to look and listen and use his senses and care commensurate or proportioned to the danger he is about to undertake — that of crossing a railroad track. Now, to say that a railroad company may run when approaching a place that is dangerous to the public, or to say that when. it sees a person and then does all it can to save his life, is that the exercise of ordinary care? Every one, I *435 think, and the majority of this court think it is not the exercise of ordinary care; that a railroad company is called upon when approaching a place of this kind to keep a lookout consistent with the duties of the employes, and watch to see that no injury is done.' There was evidence tending to show that this engineer had not complied with that principle of law. Yet I feel for one that it was his duty to have done that, and that no circumstances are shown in the testimony of this case that would excuse the engineer from that duty. The only excuse offered is that the door was open to give fuel to the fire, that the light shone in his eye and he could not well see ahead under those circumstances; that this door was open at this particular time, and he says the door is open a good deal of the time, more than half the time, receiving fuel and taking care of the fire; and it would seem that if the railroad has no better arrangement for protecting the public and for allowing the engineer to exercise ordinary care under such circumstances, that that would be an act of negligence of itself, although it is not complained of in this case.
It may be said that the decedent was guilty of negligence, and the jury certainly would be warranted in finding that he was guilty of negligence before he drove onto this track. The evidence tends to show that he might have seen this train, and if he had performed his duty,that he would have seen it. He could hardly help seeing the head-light, and there is no question but that he is guilty of contributory negligence in going on the track under those circumstances and under this evidence. I feel we can not say that although he was guilty of that negligence, although he did not look, because if he had looked he would have seen the train, and according to the case in 28 Ohio St., to say he looked, if he were living, would be simply to say that a man looks at the sun and yet don’t see the sun, for the train must have bqen in plain view at that time. But although *436 he has been guilty of all this negligence, getting on the track in the most careless manner, yet if the trainmen, in the exercise of ordinary care, had time and opportunity to see, and if the evidence’shows that there was opportunity, as it does in this case — or has a tendency to show in this case — that he had opportunity to check that train and save the life of the person in danger, we think it was his duty to do that, and where that duty was neglected it was negligence not to see, and it becomes the approximate cause of the injury; and that being the approximate cause of the injury it throws the liability or responsibility upon the railroad company.
Now it is said in this case that there were errors on the part of the court to. refuse to charge certain requests. We have examined these requests, and without reading them now, we find no error in refusing these requests.
In the next place,it is said that the verdict is against the evidence so much so that this case should be reversed on that ground. This proposition of law has been argued to support this principle: persons testify they did not hear the whistle or the bell; the trainmen testify of the blowing of the whistle and the ringing of the bell. Here is a conflict of testimony; yet it is urged that there is no conflict between positive testimony as one person says he did hear the bell ring, and another person testifies he did not hear it; and there being no conflict between such testimony,it is urged that the evidence is nearly all, if not quite all, that the bell did ring and the whistle did blow. But this testimony, when we come to examine it, is not exactly of this character. There were persons walking on this track toward Noble, or toward Nottingham, I am not sure which; but they were walking upon the track and heard the whistle of this train, and knew it was about time for it tu come. They heard it whistle at Nottingham in the yard or at the station. There were several road corssings between where *437 they were and- Nottingham', and they were listening for- the ■approach of that train and paying particular-attention, a;nd they say that the bell did not rine at any of -these road crossings, nor did the whistle blow; and they testify the ■same as to this crossing here. That is not negative testimony. Where a person testifies that he was looking. or listening and paying particular attention to a certain thing as to whether the bell rings or not, and then testifies as to • that that it did ring or that it did not ring, one is as positive as the other. This testimony assumes that character of positive testimony, and it did raise a conflict before the jury, and the evidence is of that character that we feel we can not disturb this verdict under the evidence,. We find no error in this record. The case is affirmed, and the judgment is affirmed